GERMAN SAVINGS & LOAN SOC. v. DE LASHMUTT et al.

STARR et al. v. GERMAN SAVINGS & LOAN SOC. et al.

(Circuit Court, D. Oregon. September 4, 1897.)

1. DEEDS—SUIT TO CANCEL—UNDUE INFLUENCE—PLEADING.

When a deed is attacked on the ground of fraud in the grantee, by taking advantage of confidential relations between the grantor and himself, where the confidential relations are admitted, the burden is on the grantee to show that the grantor was not influenced thereby; and an answer stating that defendant does not know whether or not "she yielded to the persuasions or solicitations or directions, so fraudulently, as alleged, made by him, on account of or by reason of her said alleged confidence in him," etc., is to be construed as an admission that the conveyance was made as a result of the confidential relations, persuasions, etc.

2. SAME.

A deed obtained from a person of weak mind, while she was in a home for inebriates, in consideration of a debt due her grantee, and of a further advance made by him to relieve her pressing need of money, while acting as her agent and confidential adviser, is void, in the absence of any affirmative showing that she was not influenced by her relations with the grantee, and that she acted upon independent advice.

3. ACCORD AND SATISFACTION—CONSIDERATION.

Where a deed made in consideration of an existing debt and further advances is void because of confidential relations and undue influence, such debt and advances are a sufficient consideration to support a subsequent agreement of accord and satisfaction, made between the grantee and the grantor's heir after her death.

Martin L. Pipes, for complainants in cross bill.
Milton W. Smith and Walter S. Perry, for defendants in cross bill.

BELLINGER, District Judge. This is a suit by the German Savings & Loan Society to foreclose a mortgage, given by the defendants De Lashmutt and wife, upon certain real estate acquired by De Lashmutt by deed dated June 7, 1887, from Bridget Lavin, the mother of the defendant Starr. Starr appeared, and filed his cross bill, in which he alleges that on and long prior to June 7, 1887, De Lashmutt was the agent and confidential adviser of Bridget Lavin in respect to the management of her property, of which she owned a large amount, both real and personal; and, as such agent, he had long before said date collected the rents and profits of such property,

and cared for and managed the same as her agent. This allegation is admitted by De Lashmutt. The cross bill further alleges that Bridget Lavin was a person of weak mind, and was greatly addicted to the use of intoxicating liquor and morphine, and at times was insane, and, particularly, in the year 18— she was committed to the State Insane Asylum of the State of Montana, where she was temporarily residing, and afterwards was for a short time committed by the authorities of the city of San Francisco to the Home of Inebriates in that city, and afterwards she was committed to the State Insane Asylum at Stockton, where she died; that, while she was in said Home of Inebriates, De Lashmutt, being then her agent and confidential adviser, fraudulently, and with the intent to overreach and defraud her, induced her to make her mark to a deed, conveying to him the south two-thirds of lot 3 in block 22 in the city of Portland, and, with like fraudulent intent, procured her acknowledgment and delivery to him of such deed; that during this time she was weak and ill and insane and incapable of doing any business, etc.; that she was incapable of making or acknowledging or delivering said deed, and that she did so by reason of the influence and persuasion of De Lashmutt and under his direction, without understanding the purport of her said acts or the legal effect of her deed, and without intending to convey the property to De Lashmutt; that at the time of these acts she had great confidence in De Lashmutt on account of their confidential relations, and in the execution and delivery of such deed she yielded to his persuasions and solicitations and directions, by reason of her confidence in him and his influence over her; that De Lashmutt did not pay any money or other consideration for said deed. De Lashmutt's answer denies that Bridget was non compos mentis or insane or of weak mind or incapable of making the deed in question, or that the deed was fraudulently procured or was executed through the influence or persuasion or under the direction of De Lashmutt. The answer then alleges that De Lashmutt does not know and cannot state whether, at the time the deed was executed, Bridget had great or any confidence in him, as alleged in the bill, or as to whether or not, at said time or in so doing, she yielded to the persuasions or solicitations or directions, so fraudulently, as alleged, made by said De Lashmutt on account of or by reason of her said alleged confidence in him or his said alleged influence over her. The answer further alleges that Bridget was indebted to the defendant in the sum of $5,800, and that she was in pressing need of money, and that he advanced to her the further sum of $4,200, and that such deed was to satisfy such debt and for such advance, etc.

The case then rests, so far as the cross bill and answer taken together are concerned, on the following facts: De Lashmutt was the agent and confidential adviser of Bridget Lavin. She was addicted to the use of intoxicating liquors and morphine. While he was her agent and confidential adviser, and while she was in a home for inebriates, where she had been committed for inebriety, she executed her deed to him in consideration of a debt she owed him of $5,800, and of an advance of $4,200 to relieve her pressing need for money;

and while he denies that the deed was fraudulently procured, or was executed by reason of his alleged influence or persuasion, or was under his direction, or was not understood by her, yet he does not know and cannot state whether at the time she executed the deed she had great or any confidence in him, as alleged, "or whether or not, at said time and in so doing, she yielded to the persuasions or solicitations or directions so fraudulently, as alleged, made by him, on account of or by reason of her said alleged confidence in him or his said alleged influence over her." This pleading has already been construed in this court, and held not to state a defense to the matters charged in the cross bill. 76 Fed. 907. The defendant cannot say that he does not know whether Bridget Lavin yielded to his persuasions or solicitations in executing the deed in question. The confidential business relation and agency being admitted, the burden is upon him to show affirmatively that, in taking a conveyance of her property, she acted upon independent advice. If he does not know that the deed was not the result of his influence and solicitation, by reason of the grantor's confidence in him, then it can never be known that the deed was free from undue influence, since such an influence is, as a matter of law, undue. This allegation in the answer has the effect of an admission that Bridget Lavin conveyed her property to De Lashmutt as a result of his confidential business relations with her, and of his persuasions and solicitations, under circumstances that made her susceptible to such influences. He was, moreover, her creditor to a large amount, and was therefore in a position to enforce his solicitations by the pressure of his debt.

Upon these facts, I am of the opinion that the deed is void; and the question now arises whether the further defense set up by De Lashmutt in his amendment to the answer, of an accord and satisfaction, is sufficient. Had De Lashmutt such a claim of right as would constitute a valid consideration for the agreement of compromise set out in the supplemental answer of De Lashmutt? It is contended that, inasmuch as the deed to De Lashmutt was void, his claim was without consideration in law or equity, and that he therefore had no claim of such a character as would constitute a consideration for what was done in the compromise agreement. But, upon the facts alleged, De Lashmutt had paid $10,000, treating the surrender of his debt for $5,800 as a payment for the land conveyed. If he is not entitled to claim the advantages of that contract, it does not follow that he has forfeited the debt due him and the money paid. If he had no claim of title to the land, he, at least, had a claim against the estate of Bridget Lavin, to the payment of which, in good conscience, the land might be made subject by probate administration. At least there is ground for such a claim. There was therefore something to compromise; otherwise we must assume that De Lashmutt had forfeited his debt and the $4,200 which went to the use of Bridget Lavin. It is not material that the accord did not treat the claim as one of pecuniary character. It is enough that by the accord the right which existed to prefer such a claim was extinguished. The parties necessarily must have considered that De Lashmutt had a

claim growing out of the transaction in its entirety, and that included the payment of this $10,000.

It is contended, however, that the death of Bridget transferred the trust obligation of De Lashmutt to her heir, Starr, so as to bring the agreement of accord and satisfaction within the rule that applies when relations of confidence and trust exist. But the relation thus created is, at most, merely one arising by operation of law, and does not bring the case within the rule sought to be applied. De Lashmutt had a just demand to the amount of $10,000 against the estate of Bridget, and, upon the theory of Starr as to the effect of Bridget's deed to De Lashmutt, the latter had, at least, a reasonable claim to be satisfied of this debt out of this property, and that, in my opinion, is sufficient. There were, in fact, no confidential relations existing between Starr and De Lashmutt. Starr was not afflicted with the weakness and other infirmities attributed to Bridget, nor subject to the influence of De Lashmutt. The dependence of the mother did not apply to the son. On the contrary, the agreement pleaded was in consideration of a controversy between the parties. There was contention, not confidence, between them. By the compromise of that contention, Starr has in fact got rid of a debt for which the property which he took as heir was charged, amounting to $5,800, and of a claim for money advanced to supply the necessities of Bridget Lavin, amounting to $4,200 additional. Starr cannot profit by a transaction which he repudiates, and, if there had been no accord and satisfaction, the estate in his hands must, at least, have satisfied De Lashmutt's debt. The exceptions are overruled.